# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE D. MCNEELY, | Case No.  1:25-cv-01220-BAM (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION |
| v. | |
| TIGGS-BROWN, *et al.*, | FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO OBEY A COURT ORDER, AND FAILURE TO PROSECUTE |
| Defendants. | |
| | (ECF No. 12) |
| | **FOURTEEN (14) DAY DEADLINE** |

**I.    Background**

Plaintiff Joe D. McNeely ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

On March 23, 2026, the Court screened Plaintiff's complaint and found that it failed to comply with Federal Rule of Civil Procedure 8 and failed to state a cognizable claim under 42 U.S.C. § 1983.  Plaintiff's complaint, filed on September 17, 2025, is currently before the Court for screening.  (ECF No. 12.)  The Court issued an order granting Plaintiff leave to file a first amended complaint or notice of voluntary dismissal within thirty (30) days.  (*Id.*)  The Court expressly warned Plaintiff that the failure to comply with the Court's order would result in a

1

recommendation for dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim. (*Id.*) Plaintiff failed to file an amended complaint or otherwise communicate with the Court, and the deadline to do so has expired.

## II.    Failure to State a Claim

### A.  Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

### B.  Plaintiff's Allegations

Plaintiff is currently housed at the California Substance Abuse Treatment Facility ("CSATF"), where the events in the complaint are alleged to have occurred. Plaintiff names the following defendants: (1) Tiggs-Brown, Primary Care Physician; (2) John/Jane Does, Health Care. Plaintiff asserts a violation of his Eighth Amendment rights regarding medical care.

2

Plaintiff alleges:

In 2013, Plaintiff was in custody at the Alameda County Jail, where his left shoulder was injured in an altercation.  The information Plaintiff was given by medical staff there was that the x-ray was inconclusive due to the swelling and, therefore, it could not be determined at that time if there were any fractures.  However, not long after, in or about April of 2014, Plaintiff was transferred to the custody of CDCR at Tracey DVO Reception Center.  While there, an additional x-ray was taken, and it was then determined that Plaintiff's left shoulder had been fractured.  In or about August of 2014, Plaintiff was transferred to CSATF to D-Yard.  After arriving there, Plaintiff began to submit CDCR 7362s (Health Care Service Request Forms) requesting medical care treatment for his left shoulder, notifying medical that he was in pain, and that the pain had begun to travel from his left shoulder up to his left ear and side of his head, causing Plaintiff to suffer severe headaches and not being able to sleep through the night.  After submitting the 7362 medical request forms, Plaintiff was seen by primary care physician Tiggs-Brown and one or two other primary care physicians.  At this level, Plaintiff's request for internal imaging (CT scan or MRI) and/or to have his shoulder diagnosed and repaired was denied/delayed.  Plaintiff submitted a CDCR HC 602 appeal further requesting a CT scan or MRI, diagnosis, and for his shoulder to be repaired, because Plaintiff was in pain and believed that his rotator cuff had been damaged.  However, Plaintiff was denied and refused these requests at the first and second level of administrative appeal (HC 602).  After this, and years of continuing to notify medical that he was in pain, Plaintiff was administered steroid injections, and in or about early 2022, Plaintiff was referred to physical therapy.  Subsequently, after taking an assessment of his shoulder, the physical therapist refused to administer physical therapy, due to the level of damage that she observed his shoulder was in at that time.  She referred Plaintiff to medical, accompanied with a recommendation/request that Plaintiff be given an MRI to properly diagnose/assess the damage before she would/could attempt to administer physical therapy treatment on his left shoulder.  Plaintiff claims that had it not been for this professional physical therapist, medical would have continued to deny/refuse his request for an MRI.  As a result, eight (8) years later an MRI was able to show damages to the tendons and ligaments in his left shoulder in 2022.  After this

revelation, Plaintiff still did not receive surgery on his shoulder until two (2) years later, on or about 4/24/24, for reconstruction.  Plaintiff alleges that this was a total of ten (10) years, from 2014 to 2024, that Plaintiff was forced to endure pain and suffering of a severely damaged shoulder, due to the delay/denial of proper and timely medical treatment.  Even after the surgery, medical (primary care physician Hunt) continued to provide inadequate medical and, against the surgeon's orders, Plaintiff was not scheduled for physical therapy until approximately five (5) months later.  Plaintiff alleges that this is still causing him complications in his recovery from the surgery to date.

The outside surgeon (Dr. Kowall) informed Plaintiff, before the surgery, that it would be a difficult effort to repair/reconstruct Plaintiff's shoulder due to waiting so long to have it repaired. He explained that due to it being a "Full Thickness Tare,"  the tissue/tendon/ligament that make up part of the "Rotator Cuff" had been completely severed.  (ECF No. 1 at 5.)  And, being that it was completely severed for so long, the tissue had deteriorated, leaving nothing to simply pull back together and stitch/mend.  Dr. Kowall, who is not a defendant in this claim/complaint, did the best he could do, and Plaintiff appreciates and is thankful to him for that and for him explaining everything to Plaintiff every step of the way.  He informed Plaintiff that by attaching some bovine tissue to replace the severed and deteriorated tendon/ligament, he was not 100% sure that the repair would be successful and had Plaintiff sign a consent form for him to try.  After the surgery, he informed Plaintiff that once he was inside and could see just how badly the damage really was, he almost closed it back up and scheduled Plaintiff for a full shoulder replacement. But, he decided to make the effort to repair/reconstruct Plaintiff's damaged shoulder.  Other than the foreign bovine tissue, Plaintiff still has screws and cables in his shoulder from those reconstructive efforts.  Plaintiff is still in some pain, but not as much before the surgery, and has limited range and motion of his shoulder "due to the denial/delay of the much needed surgery for ten (10) years, which caused severe tissue/tendon/ligament deterioration, lowering the percentage of the surgery being a total success."  (Id.)

Plaintiff states that this claim/complaint is "more focused on the ten (10) years that [he] was denied/delayed proper & timely medical treatment for [his] shoulder, which caused [him] to

4

experience severe pain & suffering, and sleep deprivation, for every day/month/year that [he] was denied/delayed proper & timely medical treatment/surgery on [his] left shoulder." (ECF No. 1 at 5-6.) Plaintiff further states that upon evidentiary discovery (to include any/all medical records), and with leave to amend, he will be able to cite every specific date that "each individual egregious act occurred, and therefore, the names of . . . every individual that caused/contributed to the denial/delay of proper medical treatment/surgery in this claim/complaint." (*Id.* at 6.)

Plaintiff also would like it noted that on or about 3/12/25, after he received the surgery, Plaintiff submitted a supplemental CDCR HC 602 appeal in an attempt to remedy/resolve this issue before bringing to Court. At that time, this was still an ongoing matter/issue, as Plaintiff was under the care of, and being seen by Dr. Kowall, who performed the surgery, and was going to physical therapy due to still being in recovery for the surgery. (ECF No. 1 at 6.)

In the injury section of the complaint, Plaintiff contends that upon discovery, if granted leave to amend, in addition to Defendant Tiggs-Brown, he will be able to list other defendants by name and job title, all health care provider employees that were responsible for his being denied/delayed timely/proper medical treatment for his severely damaged shoulder. However, Defendant Tiggs-Brown and other medical providers at SATF, and in administration, that he will be later naming in amended complaint/claim, are all responsible for denying/delaying him adequate medical treatment and the surgery to repair his severely damaged shoulder for ten (10) years. Plaintiff contends this denial/delay of surgery caused deterioration to the tendon in his shoulder for being completely severed for so long. Plaintiff notes that this denial/delay of surgery caused him to live in extreme pain and suffering for ten (10) long years. In addition, the deterioration of the tissue that make up the tendon may cause his need for a full shoulder replacement due to the delay in receiving the surgery. Plaintiff contends that had he received the surgery ten (10) years ago, shortly after the tendon being severed, the tissue would not have deteriorated, and he would have been able to simply pull the tissue/tendon back together and stitch/mend it. Plaintiff contends there is also a question of future damage that this denial/delay of surgery may have caused, but Plaintiff is focused on the ten (10) years of pain and suffering that he endured due to being denied and delayed surgery from 2014 to 2024.

As relief, Plaintiff seeks compensatory and punitive damages.

### C. Discussion

Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 8 and fails to state a cognizable claim upon which relief can be granted.

**Federal Rule of Civil Procedure 8**

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–557.

Plaintiff's complaint is short, but it is not a plain statement of his claims. Plaintiff's complaint does not clearly state what happened, when it happened related to his treatment, and who was involved.   As discussed below, Plaintiff's complaint does not adequately link Defendant Tiggs-Brown or the Doe Defendants to the allegations of his complaint.  Although Plaintiff seeks discovery so that he will be able to cite specific dates, acts, and names, this is not sufficient.

**Linkage Requirement**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional

6

right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's complaint fails to adequately link Defendant Tiggs-Brown and the Doe Defendants to a violation of his constitutional rights. Plaintiff alleges that he was seen by Defendant Tiggs-Brown and one or two other primary physicians and "at this level, [his] request for internal imaging (CT scan or MRI) and/or to have [his] shoulder diagnosed & repaired was denied/delayed." (ECF No. 1 at 3-4.) These allegations are not sufficient to establish an actual connection or link between Defendant Tiggs-Brown and the alleged denial or delay of Plaintiff's medical care. Plaintiff also may not simply lump defendants together in order to state a claim. Further, the Doe Defendants are not identified in the complaint's factual allegations. Plaintiff must specify what each defendant did or did not do that resulted in a violation of his rights

**Eighth Amendment – Medical Care**

A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096. In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have

7

been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference."  *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health."  *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

Plaintiff fails to state a cognizable claim for deliberate indifference to serious medical needs.  As discussed above, Plaintiff fails to adequately link the named defendants to an alleged violation of his rights.  He fails to allege that any specific individual or defendant acted in a deliberately indifferent manner.  To the extent Plaintiff seeks discovery to identify names, dates, and actions, this is not sufficient.  Additionally, Plaintiff does not allege that any defendant or individual knew that he needed additional treatment and failed to provide it.  Rather, Plaintiff's allegations indicate that he received additional care in the form of steroid injections and referral for physical therapy.  These allegations, at best, may suggest negligence by medical providers, which will not support a cause of action for deliberate indifference.

**Statute of Limitations**

Plaintiff's complaint appears to allege time-barred claims.  Section 1983 contains no specific statute of limitations.  Therefore, federal courts apply the forum state's statute of limitations for personal injury actions.  *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004);

8

*Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). California's statute of limitations for personal injury actions is two years. Cal. Civ. Proc. Code § 335.1; *Jones*, 393 F.3d at 927; *Maldonado*, 370 F.3d at 954−55.

Federal law determines when a civil rights claim accrues, and "[u]nder federal law, a claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action." *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (citation omitted); *Maldonado*, 370 F.3d at 955; *Fink*, 192 F.3d at 914.

In actions where the federal court borrows the state statute of limitations, courts should also borrow all applicable provisions for tolling the limitations found in state law. *Jones*, 393 F.3d at 927. Under California law, the two-year statute of limitations is tolled during the time a prisoner pursues his administrative remedies and is potentially tolled up to an additional two years if Plaintiff is incarcerated for a term of less than life. *Douglas*, 567 F.3d at 1109 ("State law governs the statute of limitations period for § 1983 suits and closely related questions of tolling. Section 1983 claims are characterized as personal injury suits for statute of limitations purposes" (citations omitted)); *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005) ("[T]he applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process."); Cal. Civ. Proc. Code §§ 335.1, 352.1(a) ("If a person entitled to bring an action, . . ., is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.").

California law also provides for equitable tolling of the statute of limitations where a plaintiff meets three conditions: "(1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith." *Fink*, 192 F.3d at 916 (citation and quotation marks omitted); *see also Addison v. State of Cal.*, 21 Cal. 3d 313, 319 (1978) (citations omitted). The plaintiff bears the burden to allege facts to support equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

While it generally must be raised as an affirmative defense, a time-barred claim may be

dismissed at the screening stage when expiration of the applicable statute of limitations is apparent on the face of the complaint. *See Belanus v. Clark*, 796 F.3d 1021, 1026-27 (9th Cir. 2015); *see also Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (explaining claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations when the running of the statute is apparent on the face of the complaint); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993) (indicating failure to comply with applicable statute of limitations may be grounds for dismissal at the screening phase if it is evident from the face of the complaint that the plaintiff cannot "prevail, as a matter of law, on the equitable tolling issue.").

Based on the allegations in Plaintiff's complaint, it appears that his claims may be time-barred. Plaintiff's claims are predicated on events occurring in 2014 when he learned of the fracture in his shoulder and his subsequent transfer to CSATF, where he began requesting particular treatment for his shoulder that was denied. It is apparent from the face of the complaint that he knew then of the injury that was the basis of his claims. Assuming that Plaintiff was entitled to an additional two years to file his claim due to his incarceration, Plaintiff's complaint must have been filed no later than 2018. However, the complaint in this action was not filed until 2025. Plaintiff makes no allegations to demonstrate that any equitable tolling should apply or to explain the extensive delay in bringing this action. Plaintiff's claims thus appear untimely.

**Grievance Process**

Although not entirely clear, Plaintiff may be attempting to base his claims on the denial of his health care grievances. However, Plaintiff cannot pursue any claims against prison staff based solely on the processing and review of his inmate appeals. Plaintiff does not have a constitutionally protected right to have his appeals accepted or processed. *Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir.2003); *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.19 88). The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993); *see also Wright v. Shannon,* No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or

10

ignored his inmate appeals failed to state a cognizable claim under the First Amendment).  Denial or refusal to process a prison grievance is not a constitutional violation.  *Rushdan v. Gear,* No. 1:16-cv-01017-BAM (PC), 2018 WL 2229259, at *6 (E.D. Cal. May 16, 2018).  Accordingly, Plaintiff fails to state a cognizable claim arising out of the screening, processing, or denial of his health care grievances or complaints.

### III.    Failure to Prosecute and Failure to Obey a Court Order

#### A.  Legal Standard

Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court."  District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal."  *Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986).  A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules.  *See, e.g.*, *Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–33 (9th Cir. 1987) (dismissal for failure to comply with court order).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.  *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

#### B.  Discussion

Here, Plaintiff's first amended complaint is overdue, and he has failed to comply with the Court's order.  The Court cannot effectively manage its docket if Plaintiff ceases litigating his case.  Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to defendants, also weighs in favor of dismissal, since a

11

presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction," which is the case here. *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

Finally, the Court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262; *Malone*, 833 at 132–33; *Henderson*, 779 F.2d at 1424. The Court's March 23, 2026 screening order expressly warned Plaintiff that his failure to file an amended complaint would result in a recommendation of dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim. (ECF No. 12.) Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance.

Additionally, at this stage in the proceedings there is little available to the Court that would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. As Plaintiff is proceeding *in forma pauperis* in this action, it appears that monetary sanctions will be of little use and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case.

### IV.   Conclusion and Recommendation

Accordingly, the Court HEREBY DIRECTS the Clerk of the Court to randomly assign a District Judge to this action.

Furthermore, the Court finds that dismissal is the appropriate sanction and HEREBY RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim pursuant to 28 U.S.C. § 1915A, for failure to obey a court order, and for Plaintiff's failure to prosecute this action.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen**

**(14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 5, 2026**                     /s/ *Barbara A. McAuliffe*

                                   UNITED STATES MAGISTRATE JUDGE

13